A99A1657. GILBERT v. THE STATE.
(526 SE2d 88)

ELLINGTON, Judge.

After a bench trial, Antonio Renard Gilbert was convicted of two counts of armed robbery, OCGA § 16-8-41, and two counts of aggravated assault, OCGA § 16-5-21. Gilbert was jointly indicted with Ulysse Lassiter, who was tried and convicted before a jury and whose convictions were affirmed by this Court in *Lassiter v. State*, 237 Ga. App. 495 (515 SE2d 636) (1999). Gilbert argues that the evidence adduced was insufficient to support his conviction, that the trial court erred in admitting hearsay at trial, and that the trial court

erred in denying his motion to suppress evidence. For the following reasons, we affirm.

1. Viewed in the light most favorable to support the verdicts, the evidence shows that at about 1:30 a.m. on June 5, 1997, employees closing a Taco Bell on Lawrenceville Highway in Lilburn were robbed at gunpoint. As employee Joseph Harris was preparing to close the store, he saw two men in a silver-gray car drive into the Taco Bell parking lot. He waved them away. Shortly thereafter, he saw the same car parked in the adjoining Dairy Queen parking lot, but with only the driver seated in it. As the night manager, Tonya Hall, was doing paperwork, she saw a silver-gray car pull up to the restaurant. She also waved the car away. A short time later, when Hall was talking to her fiancé on the telephone, she heard a crash as the restaurant door facing Dairy Queen was shattered by a large rock. A masked gunman entered through the broken door and grabbed Harris and forced him toward Hall's office with the gun to his head. Hall panicked, hung up the phone, and tried to close the door to her office. When the gunman threatened to kill Harris, Hall complied with his demands and opened the door. The gunman told Hall that she had "five seconds to open the safe. My ride is coming." The safe, which was on a time lock, could not be opened. So, the gunman took Hall's purse and the cash from the register drawer and fled.

When Hall hung up the telephone in a panic, her fiancé, Lawrenceville Police Department Investigator Edison, suspected that an armed robbery was in progress. He immediately radioed the Lilburn police dispatcher and then got in his car to drive to the scene. Brown, a uniformed officer with the City of Lilburn Police Department, responded to Taco Bell within one minute of receiving Edison's dispatch. As he drove into the Taco Bell parking lot, he saw a Gwinnett County patrol car pulling into the neighboring Dairy Queen parking lot. He also saw a silver-gray Monte Carlo leaving that parking lot. Officer Brown asked the Gwinnett officers to stop the car. Officer Brown then parked his patrol car in the Taco Bell lot, got his shotgun, and went toward the broken door. As he did, the gunman emerged. When the gunman saw Officer Brown, he turned and fled into the woods behind the restaurant. Brown radioed for assistance and then gave chase.

Both Hall and Officer Brown described the gunman. He was wearing two blue and white bandannas tied around his head so that only his eyes and a small strip of flesh above the bridge of his nose were visible. He was carrying a silver handgun and wearing gloves. Within a short time, the police were able to catch the gunman, Ulysse Lassiter. They recovered the stolen money and Hall's belongings as well as Lassiter's gloves, bandannas, and handgun — a silver pellet pistol.

In the meantime, Gwinnett County Officer Johnson, at Officer Brown's direction, followed the silver-gray Monte Carlo as it emerged from the Dairy Queen parking lot. He and his partner stopped the car and asked the driver, Antonio Gilbert, for his license. The officers then heard Brown's radio request for assistance. With Gilbert's license in hand, the officers started back to Taco Bell; however, when they saw that many officers were responding ahead of them, they turned around and went back to Gilbert. The police left Gilbert unattended for about three or four minutes.

Officer Johnson told Gilbert he had been stopped because he was observed leaving the scene of an armed robbery. Gilbert said he was just looking for a place to eat and gave the officers consent to search his car. The officers found during the search of the car a blue and white bandanna, a neoprene ski mask, two silk stockings, a glove, a second set of keys, and two pagers. While the search was in progress, the police discovered that Gilbert's driver's license had been suspended. He was placed under arrest for that offense. The police also searched the area around Gilbert's car. Within tossing distance of the car, they found the mate to the glove, another blue and white bandanna, and a black pellet pistol.

Gilbert gave a statement in which he denied knowing anything about the robbery. He said he was looking for a place to eat. He said he went to Taco Bell, but it was closed, so he went to Waffle House, which was open. Inexplicably, however, he went back to Taco Bell. He denied owning the items found both inside his car and on the ground. Gilbert said he was alone in the car and that he did not know Lassiter. Yet, one of the pagers found in Gilbert's car was registered to Lassiter. The bandannas, the gloves, and the pellet pistol found in or near Gilbert's car were very similar to those used by Lassiter in the robbery.

The evidence was sufficient to authorize a rational trier of fact to find Gilbert guilty of armed robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). A conviction based on circumstantial evidence is authorized when every reasonable inference and hypothesis except that of guilt are excluded by the evidence. *Brown v. State*, 260 Ga. 153, 155 (1) (391 SE2d 108) (1990). In this case, the judge was authorized to infer from the evidence that Gilbert was Lassiter's partner in crime and that on this occasion Gilbert acted as the getaway driver while Lassiter performed the armed robbery. See, e.g., *Smith v. State*, 234 Ga. App. 586, 592-594 (7) (506 SE2d 406) (1998); *Robinson v. State*, 173 Ga. App. 502, 503 (326 SE2d 597) (1985).

2. Gilbert also argues that the trial court erred in denying his motion to suppress the evidence seized from his car as a result of the traffic stop. In our review of the trial court's order denying Gilbert's

motion to suppress, we construe the evidence most favorably to uphold the court's ruling. *Mao v. State*, 222 Ga. App. 482, 483 (474 SE2d 679) (1996). It is the trial court's duty to resolve conflicts in the evidence, and its findings of credibility and fact will not be disturbed on appeal unless they are clearly erroneous. Id.

Viewed in this light, the evidence shows that Officer Brown directed Officer Johnson to stop Gilbert's car because it was the sole vehicle leaving the immediate scene of an armed robbery in progress. Moreover, Gilbert did not have his headlights on. Given these suspicious circumstances, the officers had the reasonable articulable suspicion necessary to justify the stop. *Morris v. State*, 239 Ga. App. 100, 101-102 (1) (b) (520 SE2d 485) (1999). The trial judge did not err in denying the motion.

3. Gilbert argues the trial court erred in admitting statements made by Taco Bell employee Joseph Harris into evidence through Officer Brown. Brown testified that Harris told him he saw two men in a silver-gray car circling Taco Bell shortly before the robbery. And, just before Lassiter burst through the restaurant door, Harris saw the silver-gray car pull into the Dairy Queen parking lot. Harris made these statements to Officer Brown about 30 minutes after the robbery. He offered the information as he paced in the parking lot, upset and ranting angrily. The trial court determined that Harris' statements were spontaneous and free of artifice and admitted them as part of the res gestae.

OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." As we have held, "[a] trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless it is clearly erroneous." (Citations and punctuation omitted.) *Brinson v. State*, 208 Ga. App. 556, 557 (1) (430 SE2d 875) (1993). In this case, the evidence was "relevant and the statement was made without premeditation. The trial court's decision to admit the evidence under this theory was not clearly erroneous and will not be disturbed on appeal." (Citation omitted.) *Stovall v. State*, 216 Ga. App. 138, 139 (1) (453 SE2d 110) (1995) (officer permitted to read statement he saw written down by victim of robbery within 45 minutes of crime).

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 22, 1999.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.